FILED IN CLERK'S OFFICE

MAR 1 1 2011

JAMES N. HATTEN, CLERK
By: _____ Deputy Clerk

WSD

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FRED MILANI, )
)
Plaintiff, )
)
v. )
)
ONEWEST BANK, FSB, U.S. BANK )          1:11-CV-0768
NATIONAL ASSOCIATION, )
AURORA LOAN SERVICES, LLC; )
ABN AMRO BANK, N.V.; )
DEUTSCHE BANK NATIONAL )
TRUST COMPANY; MORTGAGE )
ELECTRONIC REGISTRATION )
SYSTEMS, INC., and JOHN DOE 1 )
through JOHN DOE 5, )
)
Defendants. )

---

## NOTICE OF REMOVAL

In accordance with 28 U.S.C. §§1441 and 1446, you are hereby notified that

Defendant OneWest Bank, FSB ("OneWest")  is removing this civil action from

the Superior Court of DeKalb County, State of Georgia, to the United States

District Court for the Northern District of Georgia, Atlanta Division, and in

support thereof shows this Court the following:

~#4815-1192-5000 v.1~

1.

Plaintiff filed a Complaint against Defendants on March 1, 2011 in the Superior Court of DeKalb County, State of Georgia, Civil Action File No. 11cv2696-1 and styled *Fred Milani v. OneWest Bank, FSB, U.S. Bank National Association, Aurora Loan Services LLC, ABN Amro Bank, N.V., Deutsche Bank National Trust Company, Mortgage Electronic Registration Systems, Inc., and John Doe 1 through John Doe 5*. True and correct copies of all process, pleadings and orders served upon OneWest in said civil action are attached hereto as Exhibit A.

2.

OneWest received a copy of this Complaint on or about March 1, 2011. This Notice of Removal is filed within 30 days after receipt by OneWest of the Complaint, through service or otherwise, setting forth the claim for relief upon which this action is based, and, therefore, it is timely within the provisions of 28 U.S.C. §1446(b). To OneWest's knowledge, no other Defendant has been served with process. Accordingly, it is not necessary for OneWest to obtain the consent of any other Defendant before removing this case to this Court. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ("one becomes a party officially, and is required to take action in that capacity, only upon service of a

summons or other authority asserting measure stating the time within which the party served must appear and defend"); *C.L.B. v. Frye*, 469 F. Supp. 2d 1115, 1117 n.5 (M.D. Fla. 2006) (nonserved defendant has no obligation to respond to complaint or make decision regarding removal); *Lazo v. US Airways, Inc.*, 2008 U.S. Dist. LEXIS 66814 (S.D. Fla. Aug. 21, 2008) (defendant that has been served may remove without the consent of defendants who have not yet been served); *Valerio v. SmithKline Beecham Corp.*, 2008 U.S. Dist. LEXIS 60242 (S.D. Fla. Aug. 7, 2008) ("An exception to the unanimity requirement is lack of service upon the other defendants"); *American Resources Ins. Co., Inc. v. Evoleno Co., LLC*, 2007 U.S. Dist. LEXIS 12145 (S.D. Ala. Feb. 21, 2007) ("The law is clear, however, that a defendant that has not been served with process need not join in or consent to removal").

3.

This matter is removable to this Court because there is complete diversity of citizenship between the Plaintiff and Defendants, and the amount in controversy exceeds $75,000. Upon information and belief, the Plaintiff in this civil action was at the time of the commencement of this action and has been at all times thereafter, through and including the present time, a citizen of the State of Georgia. OneWest was at the time of the commencement of this action and has been at all times

thereafter, through and including the present time, a citizen of the State of California, in that OneWest's main office is located in California. Deutsche Bank National Trust Company ("Deutsche Bank") was at the time of the commencement of this action and has been at all times thereafter, through and including the present time, a citizen of the State of California, in that Deutsche Bank's main office is located in California. U.S. Bank National Association ("U.S. Bank") was at the time of commencement of this action and has been at all times thereafter, through and including the present time, a citizen of the State of Ohio, in that U.S. Bank's main office is located in Ohio. *See* 28 U.S.C. §1348; *Wachovia Bank, National Association v. Schmidt*, 546 U.S. 303 (2006). Aurora Loan Services LLC is a Delaware limited liability company with its principal place of business in Colorado. ABN AMRO Bank, N.V. is a Dutch bank with its principal place of business in the Netherlands. Mortgage Electronic Registration Systems, Inc. is a Delaware corporation with its principal place of business in Virginia. The parties, thus, are citizens of different states within the meaning of 28 U.S.C. §1332.

4.

The above-described action is a civil action of which this Court has original jurisdiction under the provisions of 28 U.S.C. §1332, and one which may be removed to this Court by OneWest, a Defendant therein, pursuant to the provisions

of 28 U.S.C. §§1441 and 1446, in that the amount in controversy exceeds $75,000.00 and all of the properly joined parties are citizens of different states. Although Plaintiff does not specify the amount of damages he seeks, he claims entitlement to expenses of litigation including reasonable attorneys fees, as well as general and punitive damages. Plaintiff also seeks to enjoin the foreclosure of the property located at 3687 Briarcliff Road, Atlanta, GA. Where a plaintiff seeks to enjoin a foreclosure, the amount in controversy is the value of the property. *Roper v. Saxon Mortgage Services*, 2009 U.S. Dist. LEXIS 37794, *6 (N.D. Ga. May 5, 2009), *citing Waller v. Professional Ins. Corp.*, 296 F.2d 545, 547 (5th Cir. 1961); *Mapp v. Deutsche Bank National Trust Co.*, 2009 U.S. Dist. LEXIS 100912 (M.D. Ala. Oct. 28, 2009). Plaintiff alleges that the amount of his loan secured by the property was $1,750,000.00. (Complaint ¶ 10.) Therefore, on information and belief, OneWest states that the amount in controversy exceeds $75,000.00.

5.

Accordingly, this civil action is one over which this Court has original jurisdiction under the provisions of 29 U.S.C. §1446, et seq., and one which may be removed to this Court pursuant to the provisions of 28 U.S.C. §§1441 and 1446.

WHEREFORE, OneWest respectfully requests that the entire action referred to hereinabove proceed in the United States District Court for the Northern District

of Georgia, Atlanta Division, and that no further proceeding be held in said case in

the Superior Court of DeKalb County, Georgia.

This 11th day of March, 2011.

s/ Michelle W. Johnson
Gregory M. Taube
Georgia Bar No. 699166
Michelle W. Johnson
Georgia Bar No. 759611

Attorneys for OneWest Bank, FSB

NELSON MULLINS RILEY & SCARBOROUGH LLP
201 17th Street/ 17th Floor
Atlanta, GA  30363
(404) 322-6000 (phone)
(404) 322-6050 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the within and foregoing *Notice of Removal* by depositing a copy of same in the United States Mail in a properly addressed envelope with sufficient postage affixed thereto to ensure delivery to the following:

> Mr. Francis X. Moore
> Ms. Lindsey L. Walker
> Frank X. Moore & Associates
> 1847 Peeler Road, Suite D
> Atlanta, GA 30338

This 11th day of March, 2011.

> s/ Michelle W. Johnson
> Michelle W. Johnson
> Georgia Bar No. 759611



**COPY**

FILED

2011 MAR 1 A 8: 37
CLERK OF SUPERIOR CRT
DEKALB COUNTY GEORGIA

### IN THE SUPERIOR COURT OF DEKALB COUNTY
### STATE OF GEORGIA

FRED MILANI,                )
                                   )
     Plaintiff,               )
                                   )
v.                            )     CIVIL ACTION FILE
                                 )     NO. _11CV2696 - 1_
ONEWEST BANK, FSB., U.S. BANK    )
NATIONAL ASSOCIATION, AURORA  )
LOAN SERVICES LLC; ABN AMRO  )
BANK, N.V.; DEUTSCHE BANK      )
NATIONAL TRUST COMPANY;       )
MORTGAGE ELECTRONIC        )
REGISTRATION SYSTEMS, INC. and  )
JOHN DOE 1 through JOHN DOE 5.   )
                                 )
     Defendants.           )

### PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND INTERLOCUTORY AND PERMANENT INJUNCTION AND BRIEF IN SUPPORT THEREOF

COMES NOW Plaintiff, Fred Milani ("Plaintiff" or "Mr. Milani"), pursuant to O.C.G.A. §

9-11-65, and files this Motion for Temporary Restraining Order and Interlocutory and Permanent

Injunction. Plaintiff seeks a temporary restraining order or, in the alternative, an interlocutory and

permanent injunction restraining and enjoining Defendant OneWest Bank, FSB ("OneWest") or any

of the other defendants from, directly or indirectly from: (A) conducting the foreclosure sale upon

any of the real property at 3687 Briarcliff Road, Atlanta, Georgia 30345 (the "Property") being more

particularly described as follows:

> all that tract or parcel of land lying and being in Land Lot 193, 18th
> District, DeKalb County, Georgia being Lots 5 and 6, H.G. Shepard
> Property, according to the Plat Recorded in Plat Book 20, Page 88,

1



> DeKalb County, Georgia Records, which plat is incorporated herein by reference thereto.   Being known as 3687 Briarcliff Road, according to the present system of numbering in DeKalb County, Georgia

scheduled on or after Tuesday, March 1, 2011; (B) executing or recording a deed under power; (C) evicting or attempting to evict Mr. Milani from his home; (C) transferring any interest by deed under power to a third party prior to the time Mr. Milani's challenges to the legality and validity of the purported foreclosure sale can be determined.); (D) Conveying, encumbering, pledging, hypothecating, placing liens upon or taking any action affecting title to the Property.      In support of this Motion, Plaintiff relies upon and incorporates herein the facts as set forth in the Verified Complaint being filed contemporaneously herewith.

## II.   ARGUMENT AND CITATION OF AUTHORITY

The grant or refusal of injunctive relief rests in the sound legal discretion of the trial court according to the facts of each case.  O.C.G.A. § 9-5-8.  In considering an application for injunctive relief, the Court must balance the conveniences to the parties and consider whether greater harm might be done by refusing than by granting the requested relief.  *Armstrong v. Roberts*, 254 Ga. 15, 16 (1985)(denial of interlocutory injunction); *Slautterback v. Intech Management Svcs., Inc.*, 247 Ga. 762, 765 (1981)(grant of interlocutory injunction).  In *Everett v. Tabor*, 119 Ga. 128, 130 (1903), a leading case on injunctive relief, the Supreme Court held:

> Upon hearing for an interlocutory injunction, if the evidence for the complainant is strong, and that for the defendant weak, or even if it be in practical equipoise, the injunction should be granted or refused according to the peculiar circumstances of the particular case.  There should be a balance of conveniences, and a consideration whether greater harm might result from refusing than from granting the relief prayed for.  If the grant of an injunction in such a case would operate oppressively to the

2

defendant, the restraining order should be refused; but if it appears that if the injunction were denied the complainant would be practically remediless in the event he should thereafter establish the truth of his contention, it would be strong reason why interlocutory relief should be granted. The delay to one party would not counter-balance the irreparable injury which might flow to the other, if the chancellor made the mistake in passing on a disputed issue of fact. Under such circumstances, it would generally be wise exercise of discretion to preserve the right by preserving the status.

Thus, in ruling on Plaintiff's motion, the Court must (i) balance the conveniences of the parties, and (ii) determine whether the greater harm might result from refusing than from granting the motion. Here, the Court cannot escape the conclusion that injunctive relief should be granted.

**A.     The Inconvenience and Harm That Plaintiff Will Suffer if the Court Denies This Motion Far Exceeds any Potential Inconvenience Or Harm to Defendants If this Motion Is Granted.**

If the Court refuses to grant the requested relief and enter a restraining order against Defendants, Plaintiff will suffer extraordinary inconvenience and injury, including but not limited to:

(a)     Title to the Property with be permanently and irrevocably clouded;

(b)     Plaintiff might be forced to move from his Home;

(c)     Plaintiff will suffer severe emotional strain and public humiliation;

(d)     Plaintiff will lose important long term business relations because he can not work in his profession while responding to Defendants' unlawful act; and

(e)     Plaintiff will incur substantial professional fees and other expenses to overturn the wrongful foreclosure contemplated and threatened by OneWest;

3

On the other hand, OneWest will suffer negligible, if any, harm, damage or inconvenience if injunctive relief is granted. OneWest will simply be stopped from fulfilling the objective of their unlawful and fraudulent scheme. Further, OneWest also merely will be delayed in pursuing collection of sums allegedly due them by Plaintiff. Clearly, the inconvenience, harm and damage to Plaintiff if injunctive relief is not granted far exceeds any inconvenience, harm and damage to Defendants if such relief is granted.

**B.  Plaintiff Will Suffer Irreparable Harm If the Court Does Not Grant Injunctive Relief.**

The Supreme Court has made it clear that the purpose of interlocutory injunctive relief is to preserve the status quo pending final adjudication of the dispute. "In other words, if the danger to one party is great, while the probable harm to the other is minimal, then relief ought to be granted or refused in line with such probabilities." *MARTA v. Wallace*, 243 Ga. 491, 494 (1979). The purpose for granting interlocutory injunctions is to preserve the status quo. Consequently, the applicant for an interlocutory injunction need not demonstrate irreparable injury as a prerequisite to entitle it to injunctive relief. *Jackson v. Delk*, 257 Ga. 541, 543 (1987). Nevertheless, as discussed above, Plaintiff will suffer irreparable injury if the requested relief is not granted.

**C.  There is a Substantial Likelihood That Plaintiff Will Prevail On the Merits.**

Simply put, the facts of record show that OneWest has not and cannot show that it has the right to conduct a foreclosure of the Home. OneWest in concert with the other Defendants have purposefully and fraudulently recorded assignments and have evidenced their bad faith by advertising for foreclosure and further pursuing foreclosure when they knew full well OneWest does

4

not have standing to foreclose. OneWest admits as much by having included in the advertisement the statement that **"[t]he [foreclosure] sale will be conducted subject . . . to final confirmation and audit of the status of the loan with the holder of the security deed."** Indeed, such reservation appears to have been included in full contemplation of the issues raised herein. Material questions exist as to the legality of the course of OneWest's conduct and that of its predecessors or co-conspirators.

As shown in the Verified Complaint and at the very least, an actual and justiciable controversy exists concerning the validity and enforceability of the Note and Security Deed which entitles Mr. Milani to a judgment declaring among other things: (a) the actual owner and holder of the Note; (b) the actual owner and holder of the Security Deed; (c) whether the separation of splitting of the Note from the Security Deed rendered the Note unsecured; (d) whether the MERS Assignment was authorized, valid or enforceable; (e) whether the MERS Assignment assigned, sold or conveyed anything at all and, if so, what that document assigned, sold or conveyed and the nature scope and conditions thereof; (f) whether the Note has been paid; (g) whether OneWest acquired any interest in or to the Note or Security Deed, and if so on what terms (e.g. equitable subrogation) and subject to what conditions or defenses; (h) whether OneWest has engaged in acts which have chilled the sale; (i) whether OneWest mutually departed from the terms of the Note or Security Deed, thereby requiring reasonable notice of its intent to insist upon strict compliance with the note terms[1]; (j)

---

[1] O.C.G.A. § 13-4-4, entitled "[e]ffect of mutual departure from contract terms," reads as follows:

Where parties, in the course of the execution of a contract, depart from its terms and pay

5

whether the withdrawal of the foreclosure sale scheduled in March 2010 reinstated the Note thereby requiring OneWest to comply with the notice and right to cure provisions therein; and (k) whether Mr. Milani is entitled to offset any amounts he is owed for damages from OneWest or its co-conspirators against any amounts that OneWest is determined to be entitled to collect under the Note or Security Deed.

**IV.   CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court enter a temporary restraining order and interlocutory and permanent injunction barring OneWest from evicting Plaintiff from the Property and prohibiting them from conducting a foreclosure sale pursuant to the Security Deed or otherwise attempting to collect on the Note.

WHEREFORE, Plaintiff requests that the Court grant this Motion and enter an order in the form attached as **Exhibit A**.

This 1st day of March, 2011.

**FRANK X. MOORE & ASSOCIATES**

1847 Peeler Road, Suite D
Atlanta, Georgia 30338
404-849-6176
fmoore@fxm-law.com

Francis X. Moore
Georgia Bar No. 519120
Lindsey L. Walker
Georgia Bar No. 841039

Counsel for Plaintiff

or receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given to the other of intention to rely on the exact terms of the agreement. The contract will be suspended by the departure until such notice.

6

IN THE SUPERIOR COURT OF DEKALB COUNTY
STATE OF GEORGIA

FRED MILANI,                                )
                                            )
        Plaintiff,                          )
                                            )
                                            )       CIVIL ACTION FILE
v.                                          )
                                            )       No. _____
                                            )
ONEWEST BANK, FSB., MORTGAGE                )
ELECTRONIC REGISTRATION                     )
SYSTEMS, INC.; INDYMAC BANK,                )
FSB.; INDYMAC FEDERAL BANK,                 )
FSB, and JOHN DOE 1 - through               )
JOHN DOE 10.                                )
                                            )
                                            )
        Defendants.                         )

## ORDER ON PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND INTERLOCUTORY AND PERMANENT INJUNCTION

This matter having come before the Court on Plaintiff's Motion for Temporary Restraining Order and Interlocutory and Permanent Injunction (the "Motion"), and the Court having considered the pleadings of record and the arguments of counsel, and the Court having determined that justice requires the entry of an order pending resolution of the issues in this case, and for good cause shown;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Plaintiff's Motion is GRANTED. Until further order of this Court, Defendants, their agents, attorneys, employees and representatives are restrained and enjoined from: (A) conducting the foreclosure sale upon any of the real property at 3687 Briarcliff Road, Atlanta, Georgia 30345 (the "Property") being more particularly described as follows:

> all that tract or parcel of land lying and being in Land Lot 193, 18th District, DeKalb County, Georgia being Lots 5 and 6, H.G. Shepard Property, according to the Plat Recorded in Plat Book 20, Page 88, DeKalb County, Georgia Records, which plat is incorporated herein by reference thereto.   Being known as 3687 Briarcliff Road,



according to the present system of numbering in DeKalb County, Georgia

scheduled on or after Tuesday, March 1, 2011; (B) executing or recording a deed under power; (C) evicting or attempting to evict Mr. Milani from his home; (C) transferring any interest by deed under power to a third party prior to the time Mr. Milani's challenges to the legality and validity of the purported foreclosure sale can be determined.); (D) Conveying, encumbering, pledging, hypothecating, placing liens upon or taking any action affecting title to the Property.

This ___ day of March, 2011.

_____
PRESIDING JUDGE
SUPERIOR COURT OF DEKALB COUNTY

Prepared and presented by:
**FRANK X. MOORE & ASSOCIATES**

By _____
Francis X. Moore, Georgia Bar No. 519120
1847 Peeler Road, Suite D
Atlanta, Georgia 30338
404-849-6176
fxmoore@fxm-law.com

Counsel for Plaintiff

IN THE SUPERIOR COURT OF DEKALB COUNTY
STATE OF GEORGIA

FRED MILANI,                                    )
                                                )
        Plaintiff,                              )
                                                )
v.                                              )        CIVIL ACTION FILE
                                                )        NO. _____
ONEWEST BANK, FSB., U.S. BANK                   )
NATIONAL ASSOCIATION, AURORA                    )
LOAN SERVICES LLC; ABN AMRO                     )
BANK, N.V.; DEUTSCHE BANK                       )
NATIONAL TRUST COMPANY;                         )
MORTGAGE ELECTRONIC                             )
REGISTRATION SYSTEMS, INC. and                  )
JOHN DOE 1 through JOHN DOE 5.                  )
                                                )
        Defendants.                             )

## CERTIFICATE OF COUNSEL

I, Francis X. Moore, counsel for Plaintiff in the above-styled case, do hereby certify that on

the days leading up to February 28, 2011, I exchanged in a series of emails with Frank Olsen and J.

Michael Dugan, and other litigation counsel for Defendant OneWest Bank, FSB against which

protective and injunctive relief is sought and informed them, in the latest of such emails sent at

approximately 5:21 p.m. on February 28, 2011 that Plaintiff would be presenting to the assigned or

presiding Judge of the Superior Court of DeKalb County, Georgia on March 1, 2011 on or before

9:00 a.m. today at 556 North McDonough Street, Decatur, GA 30030 Plaintiff's Motion for

Temporary Restraining Order and Interlocutory and Permanent Injunction (the "Motion"). As shown

in the Verified Complaint, because this case involves a foreclosure sale scheduled for Tuesday,

March 1, 2011 immediate and irreparable injury, loss, or damage will result to the Plaintiff before

the adverse party or his attorney can be given full notice and opportunity to be heard in opposition

to the Motion. Attached to the email sent this morning to Messrs. Olsen and Dugan was a copy of

the pleadings being filed contemporaneously herewith.

This 1st day of March, 2011.

FRANK X. MOORE & ASSOCIATES

1847 Peeler Road, Suite D
Atlanta, Georgia 30338
404-849-6176
fmoore@fxm-law.com

Francis X. Moore, Georgia Bar No. 519120

Counsel for Plaintiff

## CERTIFICATE OF SERVICE

This is to certify that I have this date served the following as counsel of record in the foregoing matter, with a copy of the within and foregoing pleading by email and by depositing same in the United States Mail with proper postage affixed thereon and addressed to

J. Michael Dugan, Esq.
McCurdy & Candler, LLC
3525 Piedmont Road, N.E.
Building 6, Suite 700
Atlanta, Georgia 30305

This 1st day of March, 2011.

_____
Francis X. Moore

7

IN THE SUPERIOR COURT OF DEKALB COUNTY
STATE OF GEORGIA

FRED MILANI,

      **Plaintiff**

vs.

                                             **Civil Action No: 11CV2696-1**

ONEWEST BANK, FSB., U.S. BANK
NOATIONAL ASSOC., AURORA
LOAN SERVICES, LLC, ABN AMRO
BANK, N.V., DEUTSCHE BANK
NATIONAL TRUST CO.,
MORTGAGE ELECCTRONIC
REGISTRATION SYSTEMS, INC. and
JOHN DOE 1-5,

      **Defendants.**

## ORDER DENYING PLAINTIFF'S EMERGENCY PETITION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

This matter came before the Court upon Plaintiff's filing of a Verified Petition for Temporary Restraining Order/ Preliminary Injunction, filed on March 1, 2011. After reviewing the Plaintiff's Petition, this Court HEREBY DENIES the Petition and finds as follows:

Pursuant to Uniform Superior Court Rule 6.7, upon written notice and good cause shown, the assigned judge may shorten or waive the time requirement applicable to emergency motions, or grant an immediate hearing on any matter requiring such expedited procedure. However, the motion shall set forth in detail the necessity for such expedited procedure. Id. The Plaintiff's petition requests that this Court, without notice or hearing from the opposing side, grant a temporary restraining order/ preliminary injunction to prevent the selling of the subject property.

However, pursuant to O.C.G.A. §9-11-65, the Plaintiff has failed to show that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party can be

heard in opposition.  This Court finds that the Plaintiff has recourse available to him to either prevent or correct the harm alleged.

Based upon the foregoing, this Court HEREBY DENIES the Plaintiff's Emergency Petition for Temporary Restraining Order/ Preliminary Injunctions.

So Ordered this _1ˢᵗ_ day of March, 2011.

Courtney L. Johnson, Judge
Superior Court of DeKalb County
Stone Mountain Judicial Circuit

Cc:

## IN THE SUPERIOR COURT OF DEKALB COUNTY
## STATE OF GEORGIA

FRED MILANI,                                    )
                                                )
    Plaintiff,                                )
                                                )
v.                                              )          CIVIL ACTION FILE
                                                )          NO. _11CV0696-1_
ONEWEST BANK, FSB., U.S. BANK                   )
NATIONAL ASSOCIATION, AURORA                    )
LOAN SERVICES LLC; ABN AMRO                     )
BANK, N.V.; DEUTSCHE BANK                       )
NATIONAL TRUST COMPANY;                         )
MORTGAGE ELECTRONIC                             )
REGISTRATION SYSTEMS, INC. and                  )
JOHN DOE 1 through JOHN DOE 5.                  )
                                                )
    Defendants.                               )

### SUMMONS

TO:    OneWest Bank, FSB
       888 East Walnut Street,
       Pasadena, CA 91101

You are hereby summoned and required to file with the Clerk of said Court and serve upon the Plaintiff's attorney, whose name and address is:

Francis X. Moore, Esq.
Frank X. Moore & Associates
1847 Peeler Road, Suite D
Atlanta, Georgia 30338
404-849-6176

an answer to the complaint which is herewith served upon you, within 30 days after the service of this summons upon you, exclusive of the day of service. If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint.

This _1st_ day of _March_ 2011.

Clerk of Superior Court

By: _____
Clerk of Superior Court of DeKalb County

# COPY

IN THE SUPERIOR COURT OF DEKALB COUNTY
STATE OF GEORGIA

**FILED**

| | | |
|---|---|---|
| FRED MILANI, | ) | 2011 MAR -1  A 8: 37 |
| | ) | |
| Plaintiff, | ) | CLERK OF SUPERIOR CRT |
| | ) | DEKALB COUNTY GEORGIA |
| v. | ) | CIVIL ACTION FILE |
| | ) | NO. _11CV2696-1_ |
| ONEWEST BANK, FSB.; U.S. BANK | ) | |
| NATIONAL ASSOCIATION; AURORA | ) | |
| LOAN SERVICES LLC; ABN AMRO | ) | |
| BANK, N.V.; DEUTSCHE BANK | ) | |
| NATIONAL TRUST COMPANY; | ) | |
| MORTGAGE ELECTRONIC | ) | |
| REGISTRATION SYSTEMS, INC.; and | ) | |
| JOHN DOE 1 through JOHN DOE 5, | ) | |
| | ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT

COMES NOW,  Fred Milani, ("Mr. Milani") and files this Verified Complaint against (a)

OneWest Bank, FSB; (b) U.S. Bank National Association; (c) Aurora Loan Services LLC; (d) ABN

AMRO Bank, N.V.; (e) Deutsche Bank National Trust Company; (f) Mortgage Electronic

Registration Systems, Inc.; and (g)  certain known and unknown individuals or entities to be named

as John Doe-1 through John Doe-5 ("Doe Defendants" who together with all of the foregoing

Defendants are sometimes collectively referred to as the "Defendants").

## JURISDICTION AND VENUE

### 1.

Defendant OneWest Bank, FSB ("OneWest") is believed to be a federally chartered savings

bank that, according to it website, is conducting business in Georgia, and is subject to the jurisdiction

and venue of this Court.  OneWest may be served with a Summons and a copy of this Complaint by

serving its managing agent at 888 East Walnut Street, Pasadena, CA 91101, or as otherwise allowed

under Georgia law.

2.

Defendant U.S. Bank National Association ("US Bank") is believed to be a federally chartered national bank that, according to it website, is conducting business in Georgia, and is subject to the jurisdiction and venue of this Court. US Bank may be served with a Summons and a copy of this Complaint by serving its managing agent at 425 Walnut Street, Cincinnati, Ohio 45202, or as otherwise allowed under Georgia law.

3.

Defendant Aurora Loan Services LLC ("Aurora") is a Delaware limited liability company registered to conduct business in Georgia. Aurora is subject to the jurisdiction and venue of this Court. Aurora may be served with a Summons and a copy of this Complaint by serving its registered agent Corporation Service Company at 40 Technology Pkwy South, #300, Norcross, Georgia 30092 or as otherwise allowed under Georgia law.

4.

Defendant ABN AMRO Bank, N.V. ("ABN AMRO") is believed to be a Dutch public limited liability company that has conducted business in the State of Georgia in such a manner as to make it subject to both the jurisdiction and venue of this Court. ABN AMRO may be served with a Summons and a copy of this Complaint as allowed under Georgia law.

5.

Defendant Deutsche Bank National Trust Company ("Deutsche National") is believed to be a "Member" of the Federal Reserve System engaged in "Trust, Fiduciary, and Custody Activities" and is subject to the jurisdiction and venue of this Court. Deutsche may be served with a Summons and a copy of this Complaint by serving its managing agent at 300 South Grand Avenue, 41 St Floor Los Angeles, California 90071, or as otherwise allowed under Georgia Law.

6.

Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is believed to be a Delaware corporation which conducts business in Georgia, but is not registered with the Georgia Secretary of State.  MERS is subject to the jurisdiction and venue of this Court.  MERS may be served with a Summons and a copy of this Complaint by serving its managing agent at 3300 South West 34th Avenue, Suite 101, Ocala, Florida 34474-7448 or as otherwise allowed under Georgia law.

7.

Defendants John Doe-1 through John Doe-5 are unknown individuals or entities either (a) being the real-party-in-interest relative to an alleged indebtedness which OneWest is purporting to collect through its currently scheduled foreclosure; (b) having aided, abetted, participated in or profited from the actions or series of actions constituting the tortious or improper conduct described herein; or (c) acted and aided and abetted others for the purpose of preventing the exposure of the true nature and scope of the illegal or improper scheme.  One or more of said individuals or entities reside in or are citizens of the State of Georgia and all of them are subject to the jurisdiction and venue of this Court.  Once identified, the Doe Defendant (s) may be served with a summons and a copy of this complaint in accordance with Georgia law.

8.

Venue is proper in this Court because, among other reasons: (a) a substantial part of the business which is the subject matter of this complaint was transacted in this county; (b) the affected property (i.e. Mr. Milani's home) is located in this county; (c) the tortious act, omission or injury complained of took place or damages were sustained in this county; (d) one or more of the Defendants reside or transact business in this county; and (e) the Defendants are co-conspirators or

co-obligors. Furthermore, any foreign persons or entities named as defendants committed a tortious act or omission in this State and they regularly do or solicit business, or engage in other persistent courses of conduct or derive substantial revenue from services rendered in this State such that jurisdiction over them would not and does not violate traditional notions of fair play and substantial justice.

## GENERAL ALLEGATIONS

### 9.

Mr. Milani owns that certain residential property located at 3687 Briarcliff Road, Atlanta, DeKalb County, Georgia 30345 being more particularly described as being

> ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 193, 18TH DISTRICT, DEKALB COUNTY, GEORGIA BEING LOTS 5 AND 6, H.G. SHEPARD PROPERTY, ACCORDING TO THE PLAT RECORDED IN PLAT BOOK 20, PAGE 88, DEKALB COUNTY, GEORGIA RECORDS, WHICH PLAT IS INCORPORATED HEREIN BY REFERENCE THERETO. BEING KNOWN AS 3687 BRIARCLIFF ROAD, ACCORDING TO THE PRESENT SYSTEM OF NUMBERING IN DEKALB COUNTY, GEORGIA

(the "Home"). At all relevant times, the Home has been the personal residence of Mr. Milani.

### The Loan Transaction

### 10.

In mid-2005, Mr. Milani sought to refinance existing debt secured by his Home and entered into a refinance transaction (the "Loan") and, in connection therewith, on July 25, 2005, he signed that certain Adjustable Rate Note (the "Note") which contained the statement that "[i]n return for a loan that I have received, I promise to pay U.S. $1,750,000.00 . . . to the order of the Lender . . . IndyMac Bank, F.S.B., a federally chartered savings bank."

11.

To obtain the Loan, Mr. Milani was required to sign a document captioned "INDYMAC PREDATORY LENDING DISCLOSURE" which included the following section preceded by a checked box:

You have applied for a home loan where the lender has not verified your income and/or assets by traditional verification methods, or where your income and/or assets may not have been disclosed on your loan application.

Our loan approval decision, including our assessment of your ability to repay the loan, was based on your credit history and any proposed change in your monthly mortgage payment. The source of your income may or may not have been considered. We did not specifically consider the amount of your monthly income in our decision to approve this loan. The value of your assets may or may not have been considered. In exchange for not having to disclose and/or document your income and/or asset information, you may be required to pay a higher interest rate on the loan and/or additional fees.

Your initial monthly payment of principal, interest, taxes and insurance will be $5,628.69

**Without verification of your income and/or asset value, it may be difficult to fully assess the additional risk that may be associated with this mortgage. If you cannot afford to make this payment or you fail to meet the other obligations in your loan documents, you could lose your home, and any money you have put into it.**

12.

IndyMac made adjustable rate loans like the one it made to Mr. Milani without verification of income or assets and in full expectation of prospective failure.

13.

In connection with refinancing his Home, Mr. Milani also contemporaneously signed a document entitled "Security Deed" (the "Security Deed") which included the following terms (with emphasis added):

This Security Instrument secures to Lender:(i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, **Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns)** and the successors and assigns of MERS, with power of sale, the following described property . . .."

. . .

This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

14.

According to the Security Deed, Lender was defined as being "IndyMac Bank, F.S.B., a federally chartered savings bank" and MERS was defined as:

Mortgage Electronic Registration Systems, Inc. . . . a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the grantee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. (Emphasis in original).

15.

According to the Note Mr. Milani signed in July 2005, and assuming it was otherwise enforceable, immediately after the closing, the real-party-in-interest with the rights to enforce the Note was IndyMac.

16.

According to the terms of the Security Deed Mr. Milani signed in July 2005, and assuming it was otherwise enforceable, immediately after the closing and execution and delivery thereof, legal title to the Home was conveyed to MERS together with a power of sale.

17.

According to their terms, upon the execution and delivery of the Note and Security Deed, the Note was separated or split from the Security Deed.

-6-

**Residential Mortgage Backed Securities - A Ponzi Scheme**

18.

The separation of the Note from the Security Deed was intended to facilitate an improper and illegal scheme of securitization of residential mortgages that has been referred to by such terms as "Asset Backed Securities" ("ABS") a subset of which included "Collateralized Debt Obligations" ("CDOs"), a subset of which included "Residential Mortgage Backed Securities" ("RMBSs").

19.

According to the securitization scheme, banks or other lending institutions originating a residential loan would subsequently accept payment and convey or assign away its rights to collect the loan.  A number of such loans would be pooled and sold to an entity formed by Wall Street professional money managers (shadow bankers[1]) for a limited and special purpose of: (a) collecting, identifying, and bundling these loans; (b) slicing them into tranches (slices) to allow the stratification of various levels of risk; (c) purchasing the most favorable rating from one of the competing credit rating agencies; (d) issuing and selling securities (bonds) to investors (e.g. individuals, pension funds, and governments) located throughout the world; and (e) acquiring insurance agreements referred to as "credit default swaps" ("CDSs") by which an insurance or other risk mitigation company would agree to pay the note if a borrower default occurred.

20.

On every loan money would be made by brokers, lending institutions, appraisers, and lawyers.  For each additional bundle of loans put together, collateralized and sold, more money was

---

[1] The shadow banking system or the shadow financial system consists of non-bank financial institutions.  Shadow bankers operate outside the traditional banking system and the assets held by these money professionals has increased dramatically according to Secretary of the Treasury Timothy Geithner.

made by professional money managers on Wall Street (and their accountants and lawyers), pension fund managers, investment advisors and credit rating agencies. All of these stakeholders had every money-driven incentive to throw any and all caution (and morals) to the wind as they fed their insatiable appetite for salaries, bonuses, and profits.

21.

The managers of the lending institutions, including IndyMac, knew full well that it would not suffer from the inevitable realization of losses because it was a federally insured depositary institution. Indeed, IndyMac and its representatives knew full well that the United States taxpayers would bear the risk of what was a fully understood and anticipated financial failure.

22.

With the cash already distributed (salaries, bonuses, dividends, etc.), IndyMac had fulfilled its purpose and its continued existence was of no moment to those who had used it as a very special purpose personal wealth-making vehicle[2].

23.

Beginning in 2006 mortgage delinquencies began to dramatically increase. By the beginning of the summer of 2007, this led to what is commonly referred to as the "Subprime Mortgage Crisis" or "Mortgage Meltdown."

24.

The crisis or meltdown triggered a commensurate liability under the CDSs. One of the parties obligated to pay billions in mortgage default losses under the CDSs was American International

---

[2] What is called "moral hazard" occurs when the party with more information about its actions or intentions has a tendency or incentive to behave inappropriately from the perspective of the party with less information.

Group, Inc. ("AIG") which, in October 2008, was bailed out by the United States government in what was the first of two (so far) $700 billion installments of taxpayer's money.

25.

Taxpayers were not limited to paying losses from bailouts. A July 11, 2008 press release issued by the Federal Deposit Insurance Corporation ("FDIC") announced that:

> IndyMac Bank, F.S.B., Pasadena, CA, was closed today by the Office of Thrift Supervision. The Federal Deposit Insurance Corporation (FDIC) was named conservator. The FDIC will transfer insured deposits and substantially all the assets of IndyMac Bank, F.S.B., Pasadena, CA, to IndyMac Federal Bank, FSB.

26.

After a July 2008 estimate of losses to the taxpayers of from $4-8 billion, in an April 2009 press release, the FDIC reported that IndyMac's failure cost taxpayers $11.7 billion. After IndyMac's uninsured depositors received a 50% dividend, they were stuck for another $.5 billion, and because insufficient funds were recovered from IndyMac's assets, IndyMac's unsecured creditors received nothing.

27.

In Notice 59541 published in the Federal Register, Vol. 74, No. 221, Wednesday, November 18, 2009, the FDIC reported that:

> The FDIC has determined that **the assets of IndyMac Bank are insufficient** to make any distribution on general unsecured claims and therefore, such claims, asserted or unasserted, will recover nothing and have no value. The FDIC has also determined that **the assets of IndyMac Federal are insufficient** to make any distribution on general unsecured claims and therefore, such claims, asserted or unasserted, will recover nothing and have no value. (Emphasis added)

28.

Adding insult to injury, in the following "frequently asked question" or "FAQ" appearing on its website, the FDIC announces IndyMac's immunization from any and all lawsuits or claims and

essentially threatens anyone who attempts to obtain a judgment against IndyMac or IndyMac Federal for the damages they are owed:

> I am an attorney representing a client who has open litigation against the Receivership. How does this affect our case?

> Your client will not be able to obtain any payment from the receivership, even if you successfully pursued the case and obtained a favorable judgment on the claim. Because courts have consistently dismissed actions on the ground of prudential mootness under these circumstances, the FDIC as Receiver is requesting that you voluntarily dismiss this litigation and provide the attorney representing the FDIC as Receiver with a court-conformed copy of the order within the next 30 days. If this is not forthcoming, counsel for the Receiver will proceed to file a motion to dismiss your client's action.

> While it is never easy counseling a client when further pursuit of a case is not appropriate, it may be helpful to share with your client that voluntarily dismissing the case will allow all parties to avoid the expenditure of unnecessary and wasteful attorney fees and costs and to conserve judicial resources.

29.

According to the November 19, 2009 FDIC notice, in supposed compliance with its "statutory duty to resolve the institution [IndyMac Bank, FSB] in the method that is least costly to the deposit insurance fund (see 12 U.S.C. 1823(c)(4)), the FDIC effected a passthrough receivership" forming IndyMac Federal in Pasadena, California and then transferring to it, all or substantially all of IndyMac's assets.

### Note Unsecured and Security Deed Unenforceable

30.

Even if the securitization of the Note was legitimate, separating the Note from the Security Deed may have rendered the Note unsecured and the Security Deed unenforceable.

31.

Paragraph 23 of the Security Deed provides, in part, that "[u]pon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument."

32.

By operation of law, security deeds given to secure the payment of an obligation evidenced by a promissory note are canceled upon payment of the indebtedness.

33.

Upon information and belief, the Note (separate from the Security Deed) was purportedly indorsed, delivered, assigned, sold, or transferred by IndyMac and/or other purported subsequent holders of said Note to "Lehman XS Trust 2005-SN" although IndyMac may have retained or acquired certain servicer or subservicer rights and duties.

34.

According to Milani's independent investigation, the following parties and the roles they may have played in such securitization transaction are as follows:

| Role/Description | Entity/Person |
| --- | --- |
| Issuing Entity: | Lehman XS Trust 2005-SN |
| Pool Group: | 3 |
| Sponsor: | Lehman Brothers Holdings, Inc. |
| Seller: | Lehman Brothers Holdings, Inc. |
| Servicers: | IndyMac Bank, F.S.B. |
| Master Servicer: | Aurora Loan Services, LLC |
| Depositor: | Structured Asset Securities Corporation |
| Originators: | IndyMac Bank, FSB and Countrywide Home Loans, Inc. |
| Trustee: | U.S. Bank, N.A. |

| Swap Counterparty: | ABN AMRO Bank, N.V. |
| Underwriter: | Lehman Brothers |
| Custodians: | Deutsche Bank National Trust Company & U.S. Bank, N.A. |

35.

Upon information and belief, any assignment, sale, or transfer of the Note may not have been accompanied by any endorsement by IndyMac (or any other purported subsequent holder) on the original Note.

36.

Upon information and belief, before being placed in conservatorship, IndyMac assigned, endorsed, sold delivered, or transferred the Note one or more times. If so, IndyMac had nothing to convey to IndyMac Federal and, likewise, IndyMac Federal had nothing to convey to OneWest.

37.

The Note may be unenforceable because the party seeking to enforce it, OneWest, failed to provide any consideration or because the Note has already been paid in full.

**OneWest is Prohibited From Exercising any Power of Sale**

38.

OneWest cannot foreclose because of defects in its title and because OneWest does not appear to be the holder of the Note or any enforceable security deed or power of sale securing the Note.

39.

OneWest apparently relies for its purported title on three assignment documents that appear of record in the Office of the Clerk of the Superior Court of DeKalb County, Georgia. The first is that certain document captioned as "Assignment of Note (sic) and Security Deed" which is recorded

-12-

on January 2, 2009 in Deed Book 21199, Page 628 (the "MERS Assignment") the body of which

reads as follows (with bold and underline emphasis added):

> FOR VALUE RECEIVED, Mortgage Electronic Registration Services, Inc., its successors and/or assigns (ISAOA)(hereinafter referred to as "**Assignor**") **hereby sells, assigns, transfers, sets over and conveys <u>without recourse</u>** unto IndyMac Federal Bank FSB (hereinafter referred to as "**Assignee**"), whose address is 7700 W. Parmer Lane, Austin, TX 78729, **that certain Security Deed or Deed to Secure Debt executed by Fred Milani to Mortgage Electronic Registration Systems, Inc.** and dated July 25, 2005, recorded in Deed Book 18726, Page 404, Clerk's Office, Superior Court of DeKalb County, Georgia, together with the real property therein described; **and also the indebtedness (sic) described in said Deed and secured thereby, the notes (sic) evidencing said indebtedness having this day been transferred and assigned to the said Assignor (sic)** together with all of Assignee's (sic) right, title and interest in and to said Deed, the property therein described and the indebtedness (sic) secured; and the said **Assignor** (sic) is hereby **subrogated** to all the rights, powers, privileges and securities vested in **Assignee** (sic) under and by virtue of the aforesaid Security Deed or Deed to Secure Debt.

This Assignment of Note and Security Deed is executed on this 23 day of Dec, 2008.

40.

The second assignment is that certain document captioned as "Assignment of Security Deed"

which is recorded on June 28, 2010 in Deed Book 22024, Page 152 (the "FDIC Assignment") the

body of which reads as follows (with bold and underline emphasis added):

> FOR VALUE RECEIVED, FDIC as Receiver for IndyMac Federal Bank, FSB successor to IndyMac Bank, FSB (hereinafter referred to as "**Assignor**") **hereby sells, assigns, transfers, sets over and conveys <u>without recourse</u>** unto OneWest Bank FSB (hereinafter referred to as "**Assignee**"), whose address is 888 East Walnut Street, Pasadena, CA 91101, **that certain Security Deed or Deed to Secure Debt executed by Fred Milani to Mortgage Electronic Registration Systems, Inc.** and dated July 25, 2005, recorded in Deed Book 18726, Page 404, Clerk's Office, Superior Court of DeKalb County, Georgia, together with the real property therein described; **and also the indebtedness (sic) described in said Deed and secured thereby,** having this day been transferred and assigned to the said Assignee together with all of Assignor's right, title and interest in and to said Deed, the property therein described and the indebtedness secured; and the said Assignee is hereby **subrogated** to all the rights, powers, privileges and securities vested in Assignor under and by virtue of the aforesaid Security Deed or Deed to Secure Debt.

-13-

This Assignment of Security Deed (sic) is executed on this 17 day of June, 2010.

41.

The third assignment is that certain document captioned as "Corrective Assignment of Security Deed" which is recorded on September 13, 2010 in Deed Book 22130, Page 369 (the "Corrected FDIC Assignment" which, together with the MERS Assignment and the FDIC Assignment are collectively referred to as the "Johnson-Seck Assignments") the body of which reads as follows (with bold and underline emphasis added):

FOR VALUE RECEIVED, FDIC as Receiver for IndyMac Federal Bank, FSB successor to IndyMac Bank, FSB (hereinafter referred to as "**Assignor**") **hereby sells, assigns, transfers, sets over and conveys <u>without recourse</u>** unto OneWest Bank FSB (hereinafter referred to as "**Assignee**"), whose address is 888 East Walnut Street, Pasadena, CA 91101, **that certain Security Deed or Deed to Secure Debt executed by Fred Milani to Mortgage Electronic Registration Systems, Inc.** and dated July 25, 2005, recorded in Deed Book 18726, Page 404, Clerk's Office, Superior Court of DeKalb County, Georgia, together with the real property therein described; **and also the indebtedness (sic) described in said Deed and secured thereby,** having this day been transferred and assigned to the said Assignee together with all of Assignor's right, title and interest in and to said Deed, the property therein described and the indebtedness secured; and the said Assignee is hereby **subrogated** to all the rights, powers, privileges and securities vested in Assignor under and by virtue of the aforesaid Security Deed or Deed to Secure Debt. <u>This assignment is made without recourse, representation or warranty, express or implied, by te FDIC in any capacity.</u>

This Assignment of Security Deed (sic) is executed on this 12 day of September, 2010.

42.

At the purported time of the MERS Assignment, MERS does not appear to have held any interest in the Note, and it does not appear that it was authorized to take any act on behalf of IndyMac Federal.

43.

The MERS Assignment was made "without recourse" which implicates the Uniform Commercial Code, and may limit or eliminate anything the purported assignee received.

44.

At the very least, the MERS Assignment was so vague, confusing, ineffective, and incomprehensible, it would have placed any commercially reasonable beneficiary or assignee (and any of their successors or assigns) to make further and in-depth inquiries.

45.

To the extent OneWest seeks to assert any rights by virtue of any power or rights to "subrogation," such cannot be accomplished by mere fiat, nor by mere declaration. A definition for "subrogation" appearing in Black's Law Dictionary (6th. ed. 1990) describes it as "[a] device adopted by equity to compel ultimate discharge of an obligation by him who in good conscience ought to pay it. *Jenks Hatchery, Inc. v. Elliot*, 252 Or. 25, 448 P.2d 370, 373."

46.

To the extent OneWest seeks to enforce rights under the Note or Security Deed, it is barred from doing so by equitable or legal doctrines including, but not limited to, fraud or *particeps criminis* (defined in Black's Law Dictionary as "[a] participant in a crime; an accomplice. One who shared or co-operates in a criminal offense, tort or fraud.").

47.

The MERS Assignment purports to have been signed before a Texas notary public on December 23, 2008 by Erica A. Johnson-Seck, who represents herself as being a Vice President of "Mortgage Electronic Registration Services, Inc., **its successors and/or assigns (ISAOA)**" (sic).

-15-

Also signing under that title block is Eric Friedman, purporting to be its or their (i.e. the successors' and assigns') Senior Vice President.

### 48.

At the purported time of the FDIC Assignment, the FDIC does not appear to have held any interest in the Note, and it does not appear that Ms. Johnson-Seck (purporting to sign as the "attorney in fact") was authorized to take any act on behalf of IndyMac Federal.

### 49.

The FDIC Assignment was made "without recourse" which implicates the Uniform Commercial Code, and may limit or eliminate anything the purported assignee received.

### 50.

At the very least, the FDIC Assignment was so vague, confusing, ineffective, and incomprehensible, it would have placed any commercially reasonable beneficiary or assignee (and any of their successors or assigns) to make further and in-depth inquiries.

### 51.

To the extent OneWest seeks to assert any rights by virtue of any power or rights to "subrogation," by virtue of the FDIC Assignment such cannot be accomplished by mere fiat, nor by mere declaration.

### 52.

The FDIC Assignment purports to have been signed on June 17, 2010 by Erica A. Johnson-Seck and Roger Stotts, both of whom represent themselves as being the "Attorney in Fact" for "FDIC as Receiver for IndyMac Federal Bank, FSB, successor in interest to IndyMac Bank, FSB." The FDIC Assignment was also incapable of being recorded because no notary seal appeared

on its face, nor was there any indication of the recordation of any document by which Johnson-Seck and Roger Stotts were appointed Attorney in Fact for the FDIC.

53.

At the purported time of the Corrected FDIC Assignment, the FDIC does not appear to have held any interest in the Note, and it does not appear that Ms. Johnson-Seck (purporting to sign as the "attorney in fact") was authorized to take any act on behalf of IndyMac Federal.

54.

The Corrected FDIC Assignment was made "without recourse" which implicates the Uniform Commercial Code, and may limit or eliminate anything the purported assignee received.

55.

At the very least, the Corrected FDIC Assignment was so vague, confusing, ineffective, and incomprehensible, it would have placed any commercially reasonable beneficiary or assignee (and any of their successors or assigns) to make further and in-depth inquiries.

56.

To the extent OneWest seeks to assert any rights by virtue of any power or rights to "subrogation," by virtue of the Corrected FDIC Assignment such cannot be accomplished by mere fiat, nor by mere declaration.

57.

The Corrected FDIC Assignment purports to have been signed before a Texas notary public on September 2, 2010 by Erica A. Johnson-Seck and Roger Stotts, both of whom represent themselves as being the "Attorney in Fact" for "FDIC as Receiver for IndyMac Federal Bank, FSB, successor in interest to IndyMac Bank, FSB." The Corrected FDIC Assignment was also incapable

-17-

of being recorded because there was no indication of the recordation of any document by which Johnson-Seck and Roger Stotts were appointed Attorney in Fact for the FDIC.

58.

Upon information and belief (based specifically on what appears to be transcripts of her depositions posted on the internet), until July 11, 2008, Ms. Johnson-Seck was vice president of the bankruptcy and foreclosure department and an employee of IndyMac Bank, FSB. After the FDIC sale of assets to IndyMac Federal Bank, FSB, Ms. Johnson-Seck was vice president of the bankruptcy and foreclosure department and an employee of IndyMac Federal Bank, FSB. Effective March 19, 2009, Ms. Johnson-Seck became vice president of the bankruptcy and foreclosure department and an employee of OneWest Bank, FSB.

59.

Both IndyMac Federal and OneWest were or are headquartered in Pasadena, California. Upon information and belief, OneWest and its officers (including, but not limited to Erica Johnson-Seck), directors, attorneys, or major shareholders had or possessed or is deemed to have or possess (and used in its purported acquisition of its assets) inside knowledge about IndyMac. Any such knowledge of both IndyMac and IndyMac Federal in relation to the facts and circumstances prior to OneWest's purported acquisition is, therefore, imputed and chargeable to OneWest.

60.

OneWest has also intentionally caused and attempted to profit from confusion created when OneWest communicated with Mr. Milani through the U.S. mail in written letters identifying "IndyMac Mortgage Services, a division of OneWest Bank, FSB" as the sender.

61.

Such conduct violated Georgia's laws proscribing unfair and deceptive trade practices.

62.

Despite having purportedly signed the MERS Assignment, Ms. Johnson-Seck: (a) is not an actual officer of MERS; (b) is not paid by MERS and has no job duties for MERS; (c) does not attend any board meetings of MERS (or any meetings at all); (d) is not involved in the governance of MERS or vote on any corporate decisions; (e) does not report to the President of MERS; (f) has never been to MERS headquarters (or even knows where it is); (g) does not even have authority to see the information that is in the note-tracking database by MERS; (h) admits that she has no personal knowledge of facts she is affirming when she signs affidavits of lost notes, assignments, etc.; and (i) admits that she does not sign documents such as assignments in the presence of either a notary public or a witness.

63.

Based on, among other things, the foregoing information, the MERS Assignment appears to be bogus, doctored, unauthentic, false, and fraudulent. At the very least, it is intentionally misleading.

64.

Upon information and belief, there is more than one corporation with the name "Mortgage Electronic Registration Systems, Inc." and the trademark or service mark used by MERS has been designed to further and has furthered the deception and the misleading of the public, including but not limited to Mr. Milani.

65.

The Johnson-Seck Assignments are documents that appears specifically designed to further the conspiracy and scheme of residential mortgage securitization that has plundered the United States

treasury and cheated its taxpayers and citizens by visiting upon them the costs and effects of the multiple government guarantees, insurance programs, or bailouts.

66.

To the extent OneWest acquired any interest in the Note or Security Deed (and Mr. Milani disputes this) it is not a bona fide purchaser without knowledge which takes free and clear of any defenses.

**OneWest's Repeated Improper Commencement of Foreclosure Proceedings**

67.

In and about January 26, 2010, OneWest, purporting to be acting by and through "Servicer, IndyMac Federal Bank, FSB," commenced foreclosure against Mr. Milani and caused foreclosure advertisements to be published in the legal organ for DeKalb County, Georgia.  At the time it commenced foreclosure proceedings, OneWest was not authorized or empowered to do so.

68.

OneWest and/or IndyMac Federal voluntarily withdrew the foreclosure proceedings scheduled to take place in the first week of March 2010.  Even assuming OneWest or IndyMac Federal were the holder of the Note and Security Deed, and even assuming that the power of sale was enforceable, the withdrawal of the March 2010 foreclosure proceedings operated to rescind any purported acceleration of the maturity of any indebtedness and reinstated same upon the terms and conditions existing prior to any purported acceleration.  See O.C.G.A. § 44-14-85(a).

69.

There has not been compliance with the conditions precedent under the terms of the Note, the Security Deed or applicable law to the recommencement of another non-judicial foreclosure.

70.

In and about June 2010, OneWest, purporting to be acting by and through "Servicer, IndyMac Federal Bank, FSB" again commenced foreclosure against Mr. Milani and caused foreclosure advertisements to be published in the legal organ for DeKalb County, Georgia. At the time it commenced foreclosure proceedings, OneWest was not authorized or empowered to do so.

71.

OneWest and/or IndyMac Federal voluntarily withdrew the foreclosure proceedings scheduled to take place in the first week of July 2010. Even assuming OneWest or IndyMac Federal were the holder of the Note and Security Deed, and even assuming that the power of sale was enforceable, the withdrawal of the July 2010 foreclosure proceedings operated to rescind any purported acceleration of the maturity of any indebtedness and reinstated same upon the terms and conditions existing prior to any purported acceleration. See O.C.G.A. § 44-14-85(a).

72.

There has not been compliance with the conditions precedent under the terms of the Note, the Security Deed or applicable law to the recommencement of another non-judicial foreclosure. For example, at no time since the withdrawal of the July 2010 foreclosure has OneWest or anyone else complied with the obligation under the Security Deed to provide a notice and minimum of 30 days to cure the alleged defaults. Without such notice, there cannot be an acceleration of the alleged indebtedness, nor can foreclosure proceedings be lawfully commenced.

73.

In and about September 2010, OneWest, purporting to be acting by and through "Servicer, IndyMac Federal Bank, FSB" again commenced foreclosure against Mr. Milani and caused

foreclosure advertisements to be published in the legal organ for DeKalb County, Georgia. At the time it commenced foreclosure proceedings, OneWest was not authorized or empowered to do so.

74.

OneWest and/or IndyMac Federal withdrew the foreclosure proceedings scheduled to take place in the first week of October 2010. Even assuming OneWest or IndyMac Federal were the holder of the Note and Security Deed, and even assuming that the power of sale was enforceable, the withdrawal of the October 2010 foreclosure proceedings operated to rescind any purported acceleration of the maturity of any indebtedness and reinstated same upon the terms and conditions existing prior to any purported acceleration. See O.C.G.A. § 44-14-85(a).

75.

There has not been compliance with the conditions precedent under the terms of the Note, the Security Deed or applicable law to the recommencement of another non-judicial foreclosure. For example, at no time since the withdrawal of the October 2010 foreclosure has OneWest or anyone else complied with the obligation under the Security Deed to provide a notice and minimum of 30 days to cure the alleged defaults. Without such notice, there cannot be an acceleration of the alleged indebtedness, nor can foreclosure proceedings be lawfully commenced.

76.

Upon information and belief, to the extent they were ever entitled to receive it, IndyMac, IndyMac Federal, and OneWest may have already received full payment for the Note from persons or entities other than Mr. Milani. Alternatively, all payments required to be made under the terms of the Note may have been made timely by other parties.

77.

Any such persons making full payment of the Note were mere volunteers.

78.

OneWest, its agents and attorneys are fully aware that, at a minimum, a justiciable issue of fact exists as to whether OneWest has any right, power or authority to foreclose on Mr. Milani's Home. Indeed, OneWest admits as much by including in each and every one of the advertisements the statement that **"[t]he [foreclosure] sale will be conducted subject . . . to final confirmation and audit of the status of the loan with the holder of the security deed."** Indeed, such reservation appears to have been included in full contemplation of the issues raised herein.

79.

Mr. Milani believes that all audits and confirmations as to the holder or lender/creditor status should have occurred prior to - not after - the advertisement for and conducting of a foreclosure sale. Indeed, in Section 22 of the security deed which purports to give the right to foreclose on Mr. Milani's home, it expressly recognizes Mr. Milani's rights to "bring a court action to assert the non-existence of a default or any other defense . . . to acceleration and sale."

80.

OneWest is acting either: (a) willfully and deliberately in conducting an unauthorized or illegal foreclosure; or (b) with deliberate indifference to the consequences of its actions.

81.

OneWest or its agents have extracted over $50,000 from Mr. Milani based on its: (a) claims to hold the right and power to foreclose on Mr. Milani's Home; and (b) threats to advertise and/or conduct a foreclosure proceeding and the forcible eviction of Mr. Milani and his family from the Home.

82.

Mr. Milani believes (indeed, OneWest also seems to believe) that it does not or may not have the right to enforce the Note or the Security Deed or to exercise any power of sale.

83.

Defendants, separately, and in combination with each other and with others: (a) acted in an unlawful, oppressive, or immoral manner; or (b) engaged in something that might not be unlawful, oppressive, or immoral but was done through the use of unlawful, oppressive, or immoral means; or (c) engaged in something that was both unlawful, oppressive, or immoral and by unlawful, oppressive, or immoral means.

84.

Defendants' actions were by their very nature, covert and clandestine. Defendants combined in a common scheme and conspired to tortiously deprive Mr. Milani of his tangible and intangible property and property rights. Defendants, acting in concert, have willfully and intentionally deprived Mr. Milani of his rights to the quiet enjoyment of his Home.

85.

All Defendants either participated personally and took active parts in the tortious conduct committed by and on behalf of themselves or ratified such conduct.

86.

The individual defendants are personally and individually liable for the injuries which they caused Mr. Milani to suffer and sustain by and through the said defendants' commission of torts or their active participation in or ratification of the torts of other Defendants, regardless of whether they acted on their own account or on behalf of another Defendant.

87.

Each of the Defendants, by joining and participating in a civil conspiracy or by ratifying, approving or accepting the benefits of the acts of the others in furtherance of the improper and tortious conspiracy, is liable for the acts of those others.

88.

Defendants' participation in the fraudulent and illegal mortgage securitization scheme caused Mr. Milani to sustain general and special damages for, among other things: (1) harm to his business and personal reputation; (2) harm to his business and contractual relations; (3) interference with, trespass on, or conversion and slander of his real and personal property; (4) wrongful foreclosure; (5) fraud, deceit, or misrepresentation; (6) intentional infliction of emotional distress; and (7) harm by virtue of Defendants breach of duties under the applicable law.

89.

Defendants, separately and together with their co-conspirators, have demonstrated willful misconduct, malice, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences. Defendants engaged in the complained of actions with malice or with reckless indifference to Mr. Milani's protected rights.

90.

Defendants, together with others or separately, have engaged in repeated instances of fraud, deceit and other tortious conduct, thereby evincing a state of mind and a malicious intent in their dealings with Mr. Milani and others.

91.

Even if OneFirst is determined to be the real party in interest or have any interest whatsoever,

92.

Defendants acted with specific intent to harm Mr. Milani.  Mr. Milani is entitled to an award of punitive damages in an amount to be determined in the enlightened conscience of the jury to punish and penalize Defendants for their wrongful conduct and to deter them from such wrongful conduct in future, such as attempting to perpetrate another scheme that would damage and violate the rights of more and future innocent property owners.

93.

Defendants, separately and collectively and together with others have acted in bad faith, has been stubbornly litigious, and have caused Mr. Milani unnecessary trouble and expense.

94.

Defendants are liable to Mr. Milani for damages including their expenses of litigation (including reasonable attorneys fees and expenses of this litigation) pursuant to, inter alia, O.C.G.A. §§ 13-6-11.

## COUNT I

### DECLARATORY JUDGMENT

95.

Mr. Milani incorporates herein by reference the averments contained in Paragraphs 1 through 76 of this Complaint as if fully set forth herein.

96.

OneWest has taken what were previously unverified and now demonstrably false positions regarding its rights in, to, or under the Note or the Security Deed.  Mr. Milani's attempt to obtain verification of such positions and of OneWest's right, power and authority to act have been ignored or refused.  In the meantime, Mr. Milani has discovered the reasons for OneWest's silence - it is a

pretender lender, with no standing and no right to prosecute or enforce the terms of the Security Deed.

97.

Mr. Milani has reason to believe that, despite his failure to make one or more payments called for under the note he signed on or about July 25, 2005, there has not been a default under the Note because other parties have made such payments. Thus, those who are seeking to enforce the power of sale provisions are not the lenders, but persons or entities (e.g. servicers or subservicers) who were contractually obligated to make such payments and now wish to exercise the power of sale to enforce their legal theories of unjust enrichment or subrogation against Mr. Milani. It is abusive, however, for persons or entities asserting such fractured rights (e.g. unjust enrichment or subrogation), to employ the power of sale to enforce such rights without providing a forum to persons such as Mr. Milani to assert his defenses to such legal theories.

98.

Mr. Milani has reason to believe that, to the extent OneWest is receiving instructions from US Bank, Deutsche Bank, ABN Amro or any other claimed trustee, OneWest is not authorized to conduct a foreclosure at the behest of any any such trustee because either (a) such trustees may not have qualified or been approved as (or met the requirement for being) a trustee under applicable state or federal law; (b) it is purporting to act for a non-existent principal or trust; (c) the trust for which it purports to be acting has never acquired, purchased, received or obtained any rights, powers or privileges under any note or security deed signed by Mr. Milani; (d) any rights, powers or privileges that have been acquired, purchased, received or obtained by any of the Defendants are null, void, expired, invalid, or unenforceable; (e) the trust for which it purports to be acting does not provide for nor allow the commencement or completion of any power of sale foreclosure; or (f) such trustees

-27-

and OneWest have not met the conditions precedent to acting for any trust in accelerating alleged debt or in commencing or conducting a foreclosure sale.

99.

The acts of purported acceleration and the commencement of a foreclosure sale appear to be invalid, ultra vires, and contrary to the law. This lawsuit is brought for the purpose of addressing these legal issues, to obtain injunctive relief, to quiet the title to Mr. Milani's home, and for damages.

100.

At the very least, an actual and justiciable controversy exists concerning the validity and enforceability of the Note and Security Deed which entitles Mr. Milani to a judgment declaring among other things: (a) the actual owner and holder of the Note; (b) the actual owner and holder of the Security Deed; (c) whether the separation of splitting of the Note from the Security Deed rendered the Note unsecured; (d) whether the MERS Assignment was authorized, valid or enforceable; (e) whether the MERS Assignment assigned, sold or conveyed anything at all and, if so, what that document assigned, sold or conveyed and the nature scope and conditions thereof; (f) whether the Note has been paid and whether a default even exists (given payments made by one or more of the Defendants or the United States of America); (g) whether OneWest or any of the other Defendants acquired any interest in or to the Note or Security Deed, and if so on what terms (e.g. equitable subrogation) and subject to what conditions or defenses; (h) whether OneWest or any of the other Defendants has engaged in acts which have chilled the sale; (i) whether OneWest or any of the other Defendants mutually departed from the terms of the Note or Security Deed, thereby requiring reasonable notice of its intent to insist upon strict compliance with the note terms[3]; (j)

---

[3] O.C.G.A. § 13-4-4, entitled "[e]ffect of mutual departure from contract terms," reads as follows:

whether the withdrawal of the previously scheduled foreclosure sales reinstated the Note or Security Deed thereby requiring OneWest or the other Defendants to comply with the notice and right to cure provisions therein; (k) whether Mr. Milani is entitled to offset any amounts he is owed for damages from OneWest or its co-conspirators against any amounts that is determined to be payable by Mr. Milani under the Note or Security Deed; and (l) whether OneWest or any of the other Defendants are creditor(s) entitled to credit bid at any foreclosure sale of the Property.

101.

Mr. Milani is uncertain as to his rights, status, relationships and obligations with respect to the Note, the Security Deed, and each and all of the Defendants.

102:

Without the relief prayed for herein, Mr. Milani will suffer additional and further uncertainty, insecurity and damages.

103.

In addition to being entitled, as requested below, that the title to his Home be quieted, Mr. Milani is entitled to a judicial declaration as to the issues noted above.

---

Where parties, in the course of the execution of a contract, depart from its terms and pay or receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given to the other of intention to rely on the exact terms of the agreement. The contract will be suspended by the departure until such notice.

## COUNT II

## EMERGENCY TEMPORARY RESTRAINING ORDER AND INJUNCTION

### 104.

Mr. Milani repeats and makes a part of this Count II, as if fully set forth herein, all of the foregoing allegations.

### 105.

Mr. Milani will suffer immediate and irreparable harm unless OneWest is prohibited from conducting foreclosure proceedings, or executing or recording a deed under power, attempting to evict Mr. Milani from his home or purporting to transfer by deed under power Property to a third party prior to the time Mr. Milani 's challenges to the legality and validity of the purported foreclosure sale can be determined.

### 106.

Mr. Milani has no adequate remedy at law to prevent this irreparable harm.

### 107.

Mr. Milani 's injuries are and will continue to be significant and will not be otherwise compensable unless the Defendants, and each of them, are enjoined from conducting the foreclosure sale scheduled for Tuesday, March 1, 2011, credit bidding at any such sale, executing or recording a deed under power, attempting to evict Mr. Milani from his home or transferring any interest by deed under power to a third party prior to the time Mr. Milani's challenges to the legality and validity of the purported foreclosure sale can be determined.

### 108.

The detriment and damages to Mr. Milani in denying injunctive relief greatly outweigh any potential harm to the Defendants.

-30-

109.

Even if OneWest has the rights to collect under the Note or Security Deed, the amount of the debt alleged to be owing to OneWest on the Home, while disputed, is no more than $2 million and that amount is subject to offset by the damages owing by OneWest to Mr. Milani. The Home, previously for sale for approximately $10 million is worth, in this market, at least or close to two times what OneWest claims to be owed. In return for the relief requested herein, Mr. Milani agrees to keep the property taxes paid and the Home insured with a fully paid or in force policy during the period of any interlocutory injunction. Thus, there is enough value in the Home to protect OneWest even if they were later found to be authorized to take the actions sought to be enjoined.

110.

There is a substantial likelihood that Mr. Milani will prevail on the merits of this action. The granting of injunctive relief in favor of Mr. Milani will not disserve the public interest. Indeed, Mr. Milani has shown above that OneWest's actions may be fraudulent or criminal and are against and contrary to the public and the public interest.

## COUNT III

## WRONGFUL FORECLOSURE AND BREACH OF STATUTORY DUTIES

111.

Mr. Milani repeats and makes a part of this Count III, as if fully set forth herein, all of the foregoing allegations.

112.

Under the laws of the State of Georgia, a party wishing to exercise a power of sale must exercise that power fairly and in good faith and refrain from acting in a deceptive manner in its dealings with consumers.

113.

If OneWest did not have the authority, right or power to commence foreclosure proceedings or sell the Home, it has violated its duties under Georgia law and all the other Defendants are jointly and severally liable for their participation in a scheme by which OneWest has purportedly declared a default, accelerated the alleged indebtedness, and commenced foreclosure proceedings.

114.

Even if OneWest had the authority to foreclose, under the laws of the State of Georgia, a party wishing to exercise a power of sale must comply with the terms of the contract and law as to the provision of notices and the right to cure.

115.

OneWest did not give Mr. Milani proper notice of the acceleration of the alleged indebtedness and its intent to foreclose on the Home.

116.

As a result of OneWest's failure to provide proper notice and because of the breaches of the duties it owed to him, Mr. Milani has suffered damages.

117.

OneWest failed to exercise the power of sale fairly or in good faith when it improperly and in breach of the terms of the Security Deed and Note declared a default and commenced foreclosure proceedings after agreeing to accept funds to reinstate the Loan.

118.

OneWest further breached its duties to Mr. Milani.

119.

As a direct and consequential result of the breaches of their duties, or their participation in a conspiracy involving same, Mr. Milani has suffered damages from OneWest's actions. To the extent OneWest is acting at the behest or pursuant to any agreement or understandings involving any of the other Defendants, such Defendants are jointly and severally liable for such actions.

120.

OneWest may have been a participant in a fraudulent and illegal scheme or conspiracy joined by the other Defendants.

121.

Defendants have wrongfully and illegally asserted ownership and control over Mr. Milani's Home, money and other property or property rights in denial of his rights or inconsistent with them.

122.

Alternatively, Defendants have engaged in: (a) an unauthorized assumption and exercise of the right of ownership over Mr. Milani's Home in hostility to his rights; or (b) an unauthorized appropriation of said rights or property.

123.

Mr. Milani possesses valuable and important property rights in, to and with respect to the Home. Violation of or interference with these property rights constitutes a trespass or wrongful interference with those rights.

124.

The Defendants' unlawful demands for monies and the threat of forcible removal of Mr. Milani and his belongings and the intended demand for possession of the Home are acts which

represent wrongful, unlawful, continuing, and tortious interference with his rights to the exclusive use and benefit of his Home and the rights associated therewith.

125.

Defendants' actions were willful and intentional and without Mr. Milani's permission.

126.

Defendants continuous and repeated trespasses and interference with Mr. Milani's property rights have caused actual, tangible injury and damages to Mr. Milani, his Home and to his property rights. As a result, Mr. Milani has incurred actual damages from the invasion of his property rights.

127.

Because of the Defendants' trespasses and tortious interference, Mr. Milani has lost and been denied the full use and enjoyment of his property and property rights.

128.

Defendants have acted purposely and maliciously to cause Mr. Milani emotional distress.

129.

Defendants' outrageous actions have been so terrifying or insulting as to naturally humiliate, embarrass or frighten Mr. Milani.

130.

Mr. Milani is entitled to an award of damages for the injury done by Defendants to his peace, happiness and feelings in an amount to be determined in the enlightened conscience of the jury.

131.

Mr. Milani is entitled to a judgment against the Defendants, jointly and severally, for such actual, general and compensatory damages in a sum to be determined at trial, plus additional

damages incurred in the future as proven upon the trial of this action, and for such other and further relief as the court deems just and proper.

132.

All of the Defendants are jointly and severally liable for Mr. Milani's damages under this count.

133.

In this Count, Mr. Milani seeks judgment against Defendants, jointly and severally, for such actual, general and compensatory damages he has sustained in a sum to be determined at trial.

## COUNT IV

## FRAUD, DECEIT AND INTENTIONAL MISREPRESENTATIONS

134.

Mr. Milani repeats and makes a part of this Count IV, as if fully set forth herein, the foregoing paragraphs of this Complaint.

135.

Defendants employed silence when they had a duty to notify Mr. Milani of their hidden and sub rosa participation. Defendants and their co-conspirators used surprise, trickery and deceit in attempting to convert to their own use and benefit Mr. Milani's Home, money, property and property interests.

136.

Mr. Milani had a right to rely on the fulfillment of Defendants' obligations to inform and notify him of their efforts to take his Home from him and such reliance was reasonable.

137.

Had Mr. Milani known of the secret scheme that Defendants had deployed to trick, deceive and wrongfully attempt to gain title to his Home, he would have taken the appropriate steps to stop such unlawful efforts.  Because he had no knowledge of these secret proceedings, Mr. Milani was deprived of his property rights including, but not limited to the right to quiet, peaceful and full enjoyment of his Home.

138.

Mr. Milani has suffered damages as a result of Defendants' secret and unlawful scheme.

139.

Mr. Milani is entitled to recover all of his damages sustained as the result of Defendants' fraud, deceit and misrepresentations.

140.

In this Count, Mr. Milani seeks judgment against Defendants for such actual, general and compensatory damages he has sustained in a sum to be determined at trial.

141.

Mr. Milani is entitled to recover prejudgment interest in addition to other damages under the applicable laws of the State of Georgia.

## COUNT V

## QUIET TITLE

142.

Mr. Milani repeats and makes a part of this Count V, as if fully set forth herein, the foregoing paragraphs of this Complaint.

143.

Various of the Defendants claim ownership interest in or to the Home pursuant to either the Note, the Security Deed or by or through their participation in the securitization and subsequent servicing of the Note.

144.

Mr. Milani believes that any interest in the Home that any of the Defendants might have acquired has been terminated, exhausted, voided, or become invalid or unenforceable and that Mr. Milani is the sole and exclusive owner of the Home subject only to any other liens or encumbrances of record (other than the Security Deed).

145.

Contemporaneously herewith, Mr. Milani has filed a lis pendens in the property records for Fulton County which places the world on notice of this lawsuit and the claims for relief set forth herein.

146.

Mr. Milani has suffered irreparable harm as a result of the Security Deed and the Defendants' claims of ownership to the Home and Mr. Milani cannot sell or otherwise convey the Home without having the Security Deed declared null and void.

147.

Mr. Milani is without an adequate remedy at law and unless a court of equity intervenes, he will suffer irreparable harm.

148.

Mr. Milani requests that the Court try this quiet title action before a jury of twelve.

WHEREFORE, Mr. Milani respectfully prays that this matter be tried before a jury of twelve fair and impartial jurors and:  (1) that judgment be entered in his favor and against the Defendants for all damages, punitive damages, attorneys fees, costs and interest to which he is entitled as demanded in the foregoing counts of this complaint; (2) that Mr. Milani receive all of the temporary, interlocutory and permanent injunctive relief requested herein; (3) that the Court issue a decree establishing that Mr. Milani holds the Home free and clear of any interest reflected in the Security Deed or purportedly held by any of the Defendants; (4) that the costs of the action and the expenses of litigation, including reasonable attorney fees, be assessed against the Defendants; and (5) that Mr. Milani have such other and further relief as the Court deems just and proper.

This 1st day of March, 2011.

FRANK X. MOORE & ASSOCIATES

Francis X. Moore
Georgia Bar No. 519120
Lindsey L. Walker
Georgia Bar No. 841039

Counsel for Plaintiff

1847 Peeler Road, Suite D
Atlanta, Georgia 30338
404-849-6176
fmoore@fxm-law.com

-38-

**STATE OF GEORGIA**
**COUNTY OF DEKALB**

## VERIFICATION

Personally appeared before me, the undersigned attesting officer duly authorized to administer oaths, **Fred Milani**, who, upon being duly sworn, deposes and states on oath that the statements of fact contained in the foregoing **VERIFIED COMPLAINT** which, as indicated by the context, are based on what I heard, what I saw, or what I did, are true and correct. All other statements of fact are true and correct to the best of my knowledge, information and belief..

This 1st day of March, 2011.

_____/s/_____

Fred Milani

Sworn to and Subscribed
before me this 1st day
of March, 2011.

_____
NOTARY PUBLIC
My Commission Expires: